# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **DIGITAL VERIFICATION SYSTEMS, LLC,** | |
| Plaintiff, | C.A. No. 1:24–cv-12956 |
| v. | **JURY TRIAL DEMANDED** |
| **APRYSE SOFTWARE INC.,** | |
| Defendant. | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(c)

# TABLE OF CONTENTS

**Page**

I.   STAGE AND NATURE OF PROCEEDINGS ..................................................... 1

II.  SUMMARY OF THE ARGUMENT ................................................................ 1

III. STATEMENT OF THE ISSUE ...................................................................... 2

IV.  STATEMENT OF THE FACTS ..................................................................... 3

V.   LEGAL STANDARD ................................................................................... 4

    A.  This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6). ............ 4

    B.  The Law of 35 U.S.C. § 101. ............................................................... 5

VI.  ARGUMENT ............................................................................................... 6

    A.  Claim 1 of the '860 Patent is Representative. ................................................ 6

    B.  *Alice* Step 1: Claim 1 of the '860 Patent is directed to the abstract idea of incorporating information in a file to verify a document. ........................................................ 8

    C.  *Alice* Step 2: The claims of the asserted patent contain no inventive concept sufficient to transform the abstract idea into patent-eligible matter. ................................. 13

    D.  There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage. ....................................................................... 14

VII. CONCLUSION ........................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014).................................................................................................6

*Ancora Techs. v. HTC Am., Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018).............................................................................11

*Appistry, Inc. v. Amazon.com, Inc.*,
   195 F. Supp. 3d 1176 (W.D. Wash., 2016) *aff'd sub nom. Appistry, LLC v.
   Amazon.com, Inc.*, 676 F. App'x 1008 (Fed. Cir. 2017).......................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012)...............................................................................5

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018).............................................................................15

*Bilski v. Kappos*,
   561 U.S. 593 (2010)........................................................................................5, 6, 14

*Bosarge v. Mississippi Bureau of Narcotics*,
   796 F.3d 435 (5th Cir. 2015) ...................................................................................4

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)...............................................................................8

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014).............................................................................13

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
   21 F. Supp. 3d 758 (E.D. Tex. 2014)....................................................................14

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014).........................................................................7, 13

*Cuvillier v. Taylor*,
   503 F.3d 397 (5th Cir. 2007) ...................................................................................5

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980).................................................................................................5

i

*Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*,
    855 F.3d 681 (5th Cir. 2017) ..................................................................4

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)........................................................11, 13

*Epic IP LLC v. Backblaze, Inc.*,
    351 F. Supp. 3d 733 (D. Del. 2018) .......................................................9

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020) ............................................................11

*Finjan, Inc. v. Blue Coat System, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)...............................................................8

*First-Class Monitoring, LLC v. Ups of Am., Inc.*,
    389 F. Supp. 3d 456 (E.D. Tex. 2019) ..................................................15

*McZeal v. Louisiana*,
    No. 21–30631, 2022 WL 4078582 (5th Cir. Sept. 6, 2022) ....................4

*Morales v. Square, Inc.*,
    75 F. Supp. 3d. 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir.
    2015), *cert. denied*, 136 S. Ct. 1461 (2016).........................................7

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    2:16–cv-152–JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017).......7

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)...............................................................8

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)................................................................12

*Simio, LLC v. FlexSim Software Products, Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020)..............................................................16

*In re TLI Commc'ns LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016)................................................................12

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)...........................5

*Universal Secure Registry LLC v. Apple, Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ......................................................2, 9, 10

## Statutes

35 U.S.C. § 101........................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..............................................................................................4, 16

Fed. R. Civ. P. 12(c) ...............................................................................................2, 4, 6

## I.    STAGE AND NATURE OF PROCEEDINGS

On November 27, 2024, Plaintiff Digital Verification Systems, LLC ("DVS") filed this lawsuit accusing Apryse Software Inc. of infringing U.S. Patent No. 9,054,860. DVS accuses Apryse of infringing at least Claim 26 of the '860 Patent via its Apryse Digital Signatures SDK. (Compl., ECF No. 1 ¶ 33.)

## II.    SUMMARY OF THE ARGUMENT

The idea of incorporating information into a file to authenticate a document is an abstract concept ineligible for patent protection. This concept predates computers and digital document and has been widely used on physical documents such as by affixing a seal or using a notary public. The '860 Patent's claims are directed to this abstract concept and do not claim any inventive concept sufficient to confer patent eligibility on the claimed abstract idea.

As the '860 Patent itself explains, signing documents "to identify the provenance of the document and/or otherwise associate the document with the perspective entity" was well known and conventional. '860 Patent at 1:12–19. The '860 Patent recites exactly that activity as carried out digitally, or more specifically, "a digital verified identification system structured to facilitate authenticating and/or verifying the identity of an electronic signatory and/or verifying the identity of an electronic signatory to file and/or otherwise structured to associate an electronic file with one or more entities." '860 Patent at 1:37–41. In other words, it is a system that digitalizes the conventional practice of verifying a signatory to a document.

Additionally, the '860 Patent fails to teach the recited system with any specificity. For example, it concedes that "the digital identification module(s) of . . . the present system may include virtually **any** file, item, object, or device structured to be embedded or otherwise disposed

within an electronic file or document," and "the verification data elements of . . . the present system include **any** information or data." '860 Patent at 3:29–35, 3:55–59 (emphasis added).

Thus, the '860 Patent's applicant did not claim an unconventional system to solve the problem he identified. Nor did he claim a particular mechanism for improving computing systems. As the Federal Circuit has held, claims are directed to an abstract idea "where the claims simply recited conventional actions in a generic way [and do] not purport to improve any underlying technology." *Universal Secure Registry LLC v. Apple, Inc.*, 10 F.4th 1342, 1347 (Fed. Cir. 2021) [hereinafter "*USR*"] (citing *Solutran, Inv. V. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)). The '860 Patent claims an abstract concept, not a specific implementation of that concept. Its claims are therefore invalid for failure to claim patent-eligible subject matter.

Resolving this issue does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, Apryse thus requests that the Court enter judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## III.    STATEMENT OF THE ISSUE

Under the Federal Rules of Civil Procedure, a Plaintiff fails to state a claim when they assert patent infringement of invalid claims. And under *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), abstract ideas are ineligible for patentability and invalid under 35 U.S.C. § 101, absent an inventive concept that amounts to more than the abstract idea. Here, the claims of the '860 Patent are directed to the abstract idea of incorporating information that associates a document to an entity to verify or authenticate the document. The '860 Patent does not include an inventive concept beyond that idea. Should the Court therefore dismiss DVS's claims under Rule 12(c)?

## IV.    STATEMENT OF THE FACTS

The '860 Patent is entitled "Digital Verified Identification System and Method." It relates to "a digital verified identification system and method . . . for verifying and/or authenticating the identification of an entity associated with an electronic file." '840 Patent at Abstract. First, a "module generating assembly" receives "at least one verification data element" and uses it to generate a "digital identification module." *Id.* This "digital identification module" is "structured to be associated with at least one entity" and is also "capable of being disposed or embedded within at least one electronic file." *Id.* The specification of the '860 Patent admits that the recited method is a digitalization of conventional practices for authenticating documents, such as physically signing "hard copies of papers or documents . . . with a paper or other writing utensil, by one or more entities to identify the provenance of the document and/or otherwise associate the document with the respective entity," or having a "notary public or other witness" to verify or authenticate the identity of the signatory of the document. *Id.* at 1:13–22.

The '860 Patent's specification lacks specificity and does not disclose any specialized components or hardware. Instead, the specification discloses generalized descriptions of software components and the use of known file formats.  For example, "the verification data elements may include **any** indicia or data," "the digital identification module . . . may include virtually **any** file, item, object, or device structured to be embedded or otherwise disposed within an electronic file or document . . . including . . . Joint Photographic Experts Group ("JPEG") file, bitmap or pixmap file, Portable Network Graphics ("PNG") file, [or] Graphics Interchange Format ("GIF") file," "[t]he computer application may include . . . **any** program structured to create or otherwise manipulate an electronic file," "the computer application may include virtually **any** interactive file

handling program and/or word processing program." '860 Patent at 2:6–9, 3:31–40, 4:66–5:1, 5:1–5:2 (emphasis added).

The '860 Patent's purported advantages include "provid[ing] a system having one or more digital identification module structured to be embedded or otherwise disposed within at least one electronic file or document," and "the digital identification module [being] created or otherwise generated by a module generating assembly utilizing at least one verification data element corresponding to the one or more entities, such as . . . a signatory of the electronic file." *Id.* at 1:41–49. But the '860 Patent fails to teach with specificity how the modules are generated from the module generating assembly, or how the modules are embedded "or otherwise disposed" in a file, or how the "verification data element" is used by the module generating assembly.

Consequently, the alleged invention claimed in the '860 Patent amounts to nothing more than using off-the-shelf components to incorporate information relating to an entity in an electronic file to verify a document, and it does not limit how to achieve this claimed end result.

## V.    LEGAL STANDARD

### A.    This Case Should Be Disposed of at the Pleading Stage.

"When, as now, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is employed as a vehicle to test the plausibility of a complaint, it must be evaluated as if it were a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face,' . . . that is, its '[f]actual allegations must be enough to raise a right to relief above the speculative level[.]'" *Pitta v. Medeiros*, 90 F.4th 11, 17 (1st Cir.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although factual allegations are taken as true, legal conclusions are given no

deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (cleaned up).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

## B.     The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. But the law recognizes several exceptions to patent eligibility, including "abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653.

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible

concept." *Alice*, 573 U.S. at 217. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

## VI.    ARGUMENT

DVS's allegations regarding the '860 Patent should be dismissed, for the claims of the '860 Patent fail both steps of the *Alice* test and are thus invalid under 35 U.S.C. § 101. Each of the claims is directed to the abstract idea of incorporating information relating to an entity in a file to verify a document. Further, none of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 573 U.S. at 217–18 (emphasis added and cleaned up). Because DVS has failed to state a claim upon which relief may be granted, Apryse respectfully requests that the Court grant its motion and dismiss this case with prejudice. FED. R. CIV. P. 12(c).

### A.    Claim 26 of the '860 Patent is Representative.

Claim 26 of the '860 Patent is representative of the other asserted claims. The other independent claims of the '860 Patent are substantially similar to Claim 26 and do not introduce any variations that would change the § 101 analysis because they all contain the same essential elements. For example, Claim 1 is merely recites a system upon which the method of Claim 26 could be performed. '860 Patent at Cl. 1. Claim 23 merely specifies a primary component as a "digital signature." *Id.* at Cl. 23. Further, Claim 39 is a substantially similar method claim. *Id.* at Cl. 23. At bottom, the claimed advance of the independent claims is the concept of incorporating information relating to an entity in a file to verify a document.

Independent Claim 26 of the '860 Patent is also representative of dependent claims 2–22, 24–25, 27–38 because these claims recite insignificant pre- or post-solution activity and do not

change the analysis under § 101. *See Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *see also Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful) (cleaned up).

| Pre- or Post-Solution Activity | Claim(s) |
|---|---|
| embedding a digital identification module within the electronic file | 2 |
| using interactive file handling program | 3 |
| module generating assembly is accessible via interactive computer network | 4 |
| using a digital signature. | 5 |
| using a graphical representation of digital signature | 6 |
| using metadata | 7 |
| using multiple metadata | 8, 24 |
| metadata are revealed in response to a predetermined event | 9, 34 |
| the predetermined event is disposing a pointing device | 10, 32 |
| the predetermined event is clicking a pointing device | 11, 33 |
| metadata includes a module reference number | 12 |
| metadata includes an entity reference number | 13 |
| metadata includes a graphical representation of a digital signature | 14 |
| metadata includes a MAC address | 15 |
| using a pre-selected electronic file | 16, 25 |
| going into inactive state | 17 |
| verification using a unique identification number | 18 |
| verification using a social security number | 19 |
| verification using a driver's license number | 20 |
| verification using a credit card number | 21 |
| verification using a username and a password | 22 |
| receiving a valid username and password | 27 |
| receiving a unique identification number | 28 |
| verifying verification data | 29 |
| combining data with metadata to create a digital identification module | 30 |
| activating the digital identification module in response to a predetermined event | 31 |
| communicating a reference code to a third party | 35 |
| revealing metadata in response to communicating a reference code to a third party | 36 |
| pre-selecting the electronic file | 37 |
| pre-selecting a number of electronic files | 38 |

None of these limitations cause any dependent claim to be materially different from representative Claim 26, as none of the limitations is directed to any specialized components or organization of limitations giving rise to an inventive concept. Similar to the claim limitations in

representative Claim 26, the additional claim limitations in the dependent claims consist of generic components used for their conventional purpose, and thus, they do not alter the § 101 analysis. Claim 26 is thus representative for the § 101 analysis.[1]

**B.     *Alice* Step 1: Claim 26 of the '860 Patent is directed to the abstract idea of incorporating information in a file to verify a document.**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 573 U.S. at 217. After this determination, the Court must evaluate if there is an inventive concept that amounts to "significantly more than a patent upon the ineligible concept itself." *Id.* Under any plausible reading, the claims of the '860 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of incorporating information relating to an entity in a file to verify a document. *See Alice*, 134 S. Ct. at 2356–59; *Bilski*, 561 U.S. at 611.

In assessing whether this claim is directed to an abstract idea, the Court must look past the claim language for the purpose of the claim to determine what the invention is trying to achieve. *Morales v. Square, Inc.*, 75 F. Supp. 3d. 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015). All that Claim 26 of the '860 Patent describes is incorporating information relating to an entity in a file to verify a document:

| Claim Language | Claimed Idea |
|---|---|
| 26. A method of digital identification verification, comprising: | |

---

[1] *See, e.g.*, *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18–cv-00007–JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, 2:16–cv-152–JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017).

| Claim Language | Claimed Idea |
|---|---|
| receiving at least one verification data element from an entity, creating at least one digital identification module corresponding to the entity, | receiving information and creating a module |
| wherein the digital identification module includes at least one primary component at least partially associated with the entity, and | a generic module that can be associated with the entity or entities |
| embedding the at least one digital identification module within an electronic file, wherein | the module is integrated in an electronic file |
| said at least one digital identification module is cooperatively structured to be embedded within only a single electronic file. | the module is integrated in only one electronic file |

As seen above, the claim quickly reduces to the bare idea of integrating information associated with one entity in an electronic file. Much like the long-standing practice of hiring a notary public to confirm the identity of a signatory, this is an abstract idea ineligible for patenting. Indeed, when a notary verifies a document, the notary attaches materials to the document or file such that later recipients have evidence of the authentic and verified signature. The claim follows this same process, just in a digital form. This practice predates computers and digital documents and has evolved over the decades and even centuries. For example, long before digital documents and even the modern notary system, an official document may have received a wax seal as a way to verify the authenticity. In much the same way as the present claim, this was a process of integrating information associated with an entity into (or on) a document to verify the document. As demonstrated above, Claim 26 merely applies this process to electronic files or documents.

The abstract idea inquiry begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether

the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)); *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285–86 (Fed. Cir. 2018).

In the current case, Claim 26 is not directed to any specific means or method for improving technology—it is directed to the abstract idea of incorporating information relating to an entity into a file as a way to verify the document. This was not a new idea, but rather, only a way of implementing a widely used abstract idea. The applicant identified that "there is a current need in the art for a digital verified identification system structured to facilitate authenticating and/or verifying the identity of an electronic signatory to a file and/or otherwise structured to associate an electronic file with one or more entities." '860 Patent at 1:37–41. But creating a "digital identification module" that is associated with an entity, then embedding the module in a file, is a concept, not an invention, and it is thus ineligible for patent protection. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018) ("The problem, however, is that the idea of a chat session separate from the original website is not an invention; it is a concept. The asserted claims of the [asserted] patent recite the concept, but not the way to implement it.").

Claim 26 is comparable to the patent that the Federal Circuit upheld as ineligible in *USR.* 10 F.4th at 1353. In *USR*, U.S. Patent No. 9,100,826 (the "'826 Patent"), entitled "Method and Apparatus for Secure Access Payment and Identification," disclosed "a system for authenticating identities of users, including a first handheld device configured to transmit authentication information and a second handheld device configured to receive the authentication information."

*Id.* The specification of the '826 Patent taught an authenticating method that uses two devices: the first device, upon receiving verification information from the user, transmits a first wireless signal containing authentication information to the second device. *Id.* at 1353–54. The second device may then authenticate the first user by decrypting the authentication information and verifying the identity of the first user. *Id.* at 1354. The Federal Circuit held that the claims of the '826 Patent were directed to an abstract idea—the idea of "an electronic ID device . . . to (1) authenticate the user based on two factors [] and (2) generate encrypted authentication information to send to the secure registry through a point-of-sale device." *Id.* at 1354. The Federal Circuit further explained that the claims were directed to an abstract idea because "the claims do not include sufficient specificity." *Id.* The '826 Patent's specification conceded that the information used for verification—like the conventional and generic "verification data element" in the '860 Patent in the current case—was conventional. *Id.*; *see also* '860 Patent at 3:55–59. The Federal Circuit concluded that the '826 Patent's claims "broadly recite[d] generic steps and results" and were thus abstract under *Alice* Step 1. *Id.* at 1355. The claims of the '860 Patent disclose even less than the invalidated patent in *USR*. They are directed to a very similar abstract idea, and unlike the latter, the claims of the '860 Patent do not even disclose how the "information . . . associated with at least one entity" is utilized by the system for authentication or verification purposes.

In addition, the Federal Circuit has repeatedly held that in cases involving authentication technology, "patent eligibility often turns on whether the claims provide sufficient **specificity** to constitute an improvement to computer functionality itself."[2] Claim 26 is directed to an abstract

---

[2] *USR*, 10 F.4th at 1347 (citing *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 907, 910–11 (Fed. Cir. 2017) (emphasis added). *See also Electronic Communication Technologies, LLC v. ShoppersChoice.com LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020), *Solutran*, 931 F.3d at 1163, 1167, *Prism Techs. v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016 (Fed. Cir. 2017).)

end-result of each part of the system and lacks any of the specificity that the Federal Circuit requires to confer patent eligibility. Claim 26 only mentions its purported goal—"digital identification verification"—once in its preamble. Thus, Claim 26 lacks specificity to the extent that it does not even disclose the end-result of the system, or how the digital identification module or its incorporation into a file facilitates any steps of the verification, identification, or authentication process.

Neither does Claim 26 require a new or unconventional machine or process for "receiving" a verification data element, "creating" the digital identification module, or "embedding" the module within any file. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016). But Claim 26 does not describe how the desired result—verifying identity—is achieved. The mechanism to implement the idea is impermissibly unbounded in scope.

Further, Claim 26 of the '860 Patent differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a ***non-abstract*** computer-functionality improvement . . . done by a ***specific technique*** that departs from earlier approaches to solve a ***specific computer problem***." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method . . . specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 26 of the '860 Patent. It does not require a specific and unconventional technique, and it does not

identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

Further, while the claims of the '860 Patent may use "technical jargon," that does not mean it teaches a technical solution. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020) ("Although written in technical jargon, a close analysis of the claims reveals that they require nothing more than this abstract idea."). And even if the '860 Patent were directed to a useful idea, it is still invalid for lack of subject-matter eligibility. *See Secured Mail Sols.*, 873 F.3d at 910 ("The fact that an [idea] can be used to make a process more efficient, however, does not necessarily render an abstract idea less abstract.").

Accordingly, the asserted claims fail the first step of the *Alice* analysis.

**C.    *Alice* Step 2: The claims of the asserted patent contain no inventive concept sufficient to transform the abstract idea into patent-eligible matter.**

The claims of the '860 Patent are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using existing off-the-shelf components and well-known protocols to assign values for identifying data streams corresponding to different versions of content. As explained above, the abstract functional descriptions in the claims of the '860 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (holding claims failed *Alice*'s step 2 where the specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Like the invalidated claims in *Intellectual Ventures I LLC v. Symantec Corp.*, nothing in Claim 26 "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 838 F.3d 1307, 1316 (Fed. Cir. 2016)

(cleaned up). Rather, the '860 Patent, like the claims in *Symantec*, simply disclose "generic computers performing generic functions." *Id*. at 1319.

The Federal Circuit has repeatedly held that the presence of generic hardware and software like the kind recited in the claims of the '860 Patent does not make an otherwise abstract idea patent eligible.[3] Claim 26 does not even require any specific or specialized technical components to achieve the end goal of the system. Further, the '860 Patent explains that the digital identification module(s) of the present system "may include virtually ***any*** file, item, object, or device structured to be embedded or otherwise disposed within an electronic file or document," and "the verification data elements of . . . the present system include ***any*** information or data." '860 Patent at 3:29–35, 3:55–59 (emphasis added). "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. There is thus no limitation in the asserted claims that could be considered an inventive concept under step two of the *Alice* test.

## D.    There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage.

The issue of the patent eligibility of the '860 Patent is ripe for the Court's consideration. There are no claim construction issues affecting the *Alice* analysis. Additionally, there are no factual disputes on this record. The '860 Patent does not assert any unconventional mechanism of implementing the claimed idea of integrating information associated with one entity in an electronic file. As such, this case is markedly different from *Berkheimer*, where the Federal Circuit

---

[3] *See, e.g.*, *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context.").

noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional manner.

It should be noted, however, that "[t]he *Berkheimer* [] cases do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself." *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) (emphasis added). Furthermore, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox*, 815 F. App'x at 538 (internal quotations omitted).

Here, DVS's bare and implausible allegations in the complaint, (Compl., ECF No. 1 ¶¶ 15, 19), cannot defeat this motion; otherwise, Rule 12 would be rendered toothless against plaintiffs who plead "magic words." Patentee plaintiffs should not have the power to unilaterally declare that their claims are inventive. *See Appistry, Inc. v. Amazon.com, Inc.*, 195 F. Supp. 3d 1176, 1183, n.6 (W.D. Wash., 2016) *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1008

(Fed. Cir. 2017) ("Plaintiff's position is absurd. Requiring the Court to accept such facts or legal conclusions (even in the form of an early expert declaration) would permit any plaintiff to circumvent the § 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention."). DVS's decision to include conclusory assertions in the Complaint that the '860 Patent is novel and patent eligible betrays that it is keenly aware of the claims' vulnerability. (Compl., ECF No. 1 ¶¶ 15–27.)

The Court's ineligibility analysis should disregard DVS's bare legal conclusion about the novel aspects of its asserted patents. *See Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). DVS's allegations in the Complaint state that the claims "comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas" and are "novel, non-obvious, unconventional, and non-routine." (Compl., ECF No. 1 ¶¶ 15, 19.) These are not factual allegations—they are legal conclusions in which DVS attempts to unilaterally declare its patents are directed to eligible subject matter and should be ignored by the Court. *See Simio*, 983 F.3d at 1366 ("A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory."). Once DVS's conclusory legal allegations about the novelty and inventiveness of the asserted patent are disregarded, there is nothing left to preclude a determination of ineligibility on the pleadings.

Accordingly, this issue is ripe for the Court's consideration, and the '860 Patent should be found invalid for failing to claim patent-eligible subject matter.

## VII.  CONCLUSION

For these reasons, Apryse requests that the Court dismiss DVS's claims Because leave to amend would be futile, Apryse requests dismissal with prejudice.

16

Dated: February 19, 2025

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Philip K. Chen*

Philip K. Chen (BBO #703289)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
(617) 542-5070
pchen@fr.com

Neil J. McNabnay (pro hac vice forthcoming)
mcnabnay@fr.com
Texas Bar No. 24002583
Ricardo J. Bonilla (pro hac vice forthcoming)
Texas Bar No. 24082704
rbonilla@fr.com
Noel F. Chakkalakal (pro hac vice forthcoming)
Texas Bar No. 24053676
chakkalakal@fr.com
Rodeen Talebi (pro hac vice forthcoming)
Texas Bar No. 24103958
talebi@fr.com
Philip G. Brown (pro hac vice forthcoming)
pgbrown@fr.com
Texas Bar No. 24132695
Brandon S. Avers (pro hac vice forthcoming)
avers@fr.com
Texas Bar No. 24135660
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)

**ATTORNEYS FOR DEFENDANT**
**APRYSE SOFTWARE INC.**

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(a)(2)</u>

I hereby certify that the parties met and conferred on February 18, 2025, and attempted in good faith to resolve or narrow the issue but could not reach an agreement.

*/s/ Philip K. Chen*
Philip K. Chen

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on February 19, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Philip K. Chen*
Philip K. Chen
